United States District Court
Eastern District of New York

------------------------------------X

Colin Brown, suing individually on
his own behalf and representatively
on behalf of a class of plaintiffs
similarly situated,

              *Plaintiff*,


   - against -


The Allstate Corporation, et. al.,


              *Defendants*.

------------------------------------X

**Memorandum & Order**

No. 22-cv-05096(KAM)(JAM)


**Kiyo A. Matsumoto, United States District Judge:**


    Plaintiff Colin Brown ("Plaintiff" or "Brown"), individually and on behalf of a proposed class, asserts claims for (1) violations of New York's Comprehensive Motor Vehicle Reparations Act, New York Insurance Law §§ 5101 *et seq.* (the "No-Fault Claims"), (2) breach of contract, and (3) violations of New York General Business Law § 349 ("GBL § 349") against Defendants Allstate Insurance Company ("Allstate Insurance"), Allstate Fire & Casualty Insurance Company ("Allstate Fire"), Allstate Indemnity Company ("Allstate Indemnity"), and Allstate Property & Casualty Insurance Company ("Allstate P&C")

(collectively, "Defendants").[1]  (ECF No. 23. ("Am. Compl.") ¶¶ 41-54.)

On July 29, 2024, Brown moved to certify the class.  (ECF No. 38.)  Attached to Brown's motion for class certification was an expert report which estimated total class damages of $2,368,763.  (ECF No. 38-3 at 7.)  On September 25, 2024, Defendants requested a pre-motion conference in anticipation of a motion to dismiss the case for lack of subject matter jurisdiction.  (ECF No. 40.)  On October 2, 2024, the Court held a pre-motion conference on Defendants' anticipated motion to dismiss.  (Minute Entry dated Oct. 2, 2024.) In light of concerns over whether the amount in controversy requirement was satisfied, the Court stayed the briefing schedule on Brown's motion for class certification until the jurisdictional issues were resolved.  (*Id.*)  On December 3, 2024, Judge Marutollo held a discovery conference and permitted Brown to obtain jurisdictional discovery from Allstate Insurance and Allstate Fire regarding the relationship among the various Allstate entities.  (Minute entry dated Dec. 3, 2024.)

---

[1] Pursuant to the Parties' March 21, 2025 Stipulation of Dismissal, the following entities were dismissed from this action leaving only Allstate Insurance, Allstate Fire, Allstate Indemnity, and Allstate P&C: Deerbrook Insurance Company; The Allstate Corporation; Allstate New Jersey Property & Casualty Insurance Company; Allstate New Jersey Insurance Company; Allstate County Mutual Insurance Company; Allstate Northbrook Indemnity Company; Allstate Vehicle and Property Insurance Company; Encompass Holdings, LLC; Encompass Insurance Company; Encompass Indemnity Company; Esurance Insurance Company; Esurance Property and Casualty Insurance Company. (ECF No. 54.)

On May 30, 2025, Defendants moved to dismiss pursuant to Fed. R. Civ. P. ("Rule") 12(b)(1) for lack of subject matter jurisdiction on two bases: (i) Plaintiff's lack of standing against all Defendants except Allstate Fire, which issued and decided Brown's claims under his Allstate Fire insurance policy, and (ii) Plaintiff's failure to meet the $5,000,000 amount-in-controversy requirement for jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. 1332(d)(2)(A).  (ECF No. 57-1, "Mot." at 6-16.)

Before the Court are: (1) Magistrate Judge Marutollo's Report and Recommendation (ECF No. 58 ("R&R")), dated September 5, 2025, recommending that Defendants' motion to dismiss be granted in its entirety; (2) Brown's objections to the R&R (ECF No. 59 ("Pl. Objs.")); and (3) Defendants' responses to Plaintiff's objections (ECF No. 61 ("Defs. Resp.").) For the reasons stated below, upon *de novo* review, the Court adopts Magistrate Judge Marutollo's thorough, meticulous and well-reasoned R&R in its entirety.

## BACKGROUND AND FACTS

The Court assumes the parties' familiarity with the extensive facts thoroughly recounted in the R&R. (*See generally* R&R.) For present purposes, the Court reiterates only the procedural background and facts relevant to Plaintiff's objections.

On September 5, 2025, Magistrate Judge Marutollo issued his R&R to this Court. For the reasons set forth in the R&R, he recommends that Defendants' motion to dismiss be granted in its entirety.  (R&R at 22.)

On September 19, 2025, Brown timely filed five objections to Magistrate Judge Marutollo's R&R.  (ECF No. 59.)  On October 3, 2025, Defendants timely filed their responses to the Plaintiff's objections.  (ECF No. 61.)

## LEGAL STANDARD

When a party objects to an R&R, the Court must review *de novo* those recommendations in the R&R to which the party objects. *See* Rule 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). Where a party does not object to a portion of the R&R, the Court "'need only satisfy itself that there is no clear error on the face of the record.'" *Galvez v. Aspen Corp.*, 967 F. Supp. 2d 615, 617 (E.D.N.Y. 2013) (quoting *Reyes v. Mantello*, No. 00-cv-8936, 2003 WL 76997, at *1 (S.D.N.Y. Jan. 9, 2003)). The Court may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Rule 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

Objections "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *Green v. Dep't of Educ. of City of N.Y.*, No. 18-CV-10817 (AT)(GWG),

4

2020 WL 5814187, at *2 (S.D.N.Y. Sept. 30, 2020) (quoting *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009)); *Barratt v. Joie*, No. 96-CV-0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002) ("Parties filing objections to recommendations are required to pinpoint specific portions of the report and recommendations to which they object."(citation modified)). If "the [objecting] party makes only frivolous, conclusory or general objections, or simply reiterates [the party's] original arguments, the Court reviews the report and recommendation only for clear error." *Velez v. DNF Assocs.*, LLC, No. 19-CV-11138, 2020 WL 6946513, at *2 (S.D.N.Y. Nov. 25, 2020) (quoting *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 416 (S.D.N.Y. 2014)); *see also Colliton v. Donnelly*, No. 07-CV-1922 (LAK), 2009 WL 2850497, at *1 (S.D.N.Y. Aug. 28, 2009), *aff'd*, 399 F. App'x 619 (2d Cir. 2010) (summary order).

Even in a *de novo* review of a party's "specific written objections," however, "a district judge will nevertheless ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *Kennedy v. Adamo*, No. 1:02CV01776 (ENV) (RML), 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006), *aff'd,* 323 F. App'x 34 (2d Cir. 2009) (citation modified).

## DISCUSSION

The Court addresses each of Brown's objections in turn.

### I. Brown's Objection to the R&R's Finding that Plaintiff Lacks Standing to Sue Allstate Insurance

Brown argues that the R&R incorrectly "overlooked stipulated facts showing that Plaintiff's injury is directly traceable to both Allstate Fire and Allstate Insurance." (Pl. Objs. at 8.) Brown relies on two facts to argue that he has standing to sue Allstate Insurance, (*Id.* at 8-9): (i) Allstate Fire's use of a "form wage loss calculation worksheet . . . developed by an Allstate Insurance employee," (ECF No. 53, the "Stip." ¶ 8), and (ii) Allstate Insurance adjusters' "perform[ance of] wage loss calculations for" Allstate Fire, (Stip. ¶ 10; *see also* ECF No. 57-2, Ex. A, "Defs.' Resp. to First Interrog." Nos. 3, 7-8[2].) Brown argues that Magistrate Judge Marutollo erred in finding that Allstate Insurance and

---

[2] Plaintiff also relies on "Defendants' own disclosures" to identify "Joseph Gisondi and Noe Urglies-Diaz as the 'file handler[s] at Allstate for Mr. Brown's claim for First Party Benefits.'" (Pl. Objs. at 9, 9 n.4 (quoting ECF No. 59-1, "Defs.' Initial Disclosures" at 4-5).) The Court does not consider Defs.' Initial Disclosures because the disclosures were not before Magistrate Judge Marutollo and the Court "ordinarily refuse[s] to consider . . . evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance." *Kennedy v. Adamo*, 2006 WL 3704784, at *1. Even if the Court were to consider Defs. Initial Disclosures, it would not affect the analysis because Judge Marutollo considered and correctly determined that shared claims adjusters were insufficient to establish that Plaintiff has standing to sue Allstate Insurance. (*See* R&R 10-12.)

Allstate Fire have "nothing more than a passive parent-subsidiary relationship." (Pl. Objs. at 9.) Defendants respond that the R&R correctly determined that the use of a form worksheet and shared claims adjusters was insufficient to show that Allstate Insurance had any determinative or coercive effect on Allstate Fire such that Brown had standing to sue Allstate Insurance. (Defs. Resp. 10-13.)

On *de novo* review, the Court finds that Brown's arguments are unavailing because the Court agrees with the R&R's careful and well-reasoned determination that Plaintiff's allegations of Allstate Insurance's involvement do not allege sufficient facts to meet the "determinative or coercive effect" standard required for Brown to establish standing to sue Allstate Insurance. (*See* R&R at 9-12.)

"'[P]laintiff[] must demonstrate standing for each claim that [he] press[es] against each defendant." *Murthy v. Missouri*, 603 U.S. 43, 61, (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)); *see also NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 159 (2d Cir. 2012) ("Indeed, we have said that, to establish Article III standing in a class action . . . for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action

7

analysis." (citation modified)).  To establish standing to pursue claims against Allstate Insurance, Brown must show (i) "an injury in fact"; (ii) "that the injury was likely caused by [Allstate Insurance]"; and (iii) that the injury is redressable. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  At issue here is whether Brown sufficiently alleged that his injury was caused by and traceable to Allstate Insurance.[3]

Whether Brown's injury was caused by and traceable to Allstate Insurance turns on whether acts by Allstate Insurance had a "'determinative or coercive effect'" on Allstate Fire, "who directly caused the claimed injury."  *Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010) (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)).  Here, Brown's alleged injury is the "premature exhaustion and consequent denial of a statutory and contractual right" under Brown's insurance policy with Allstate Fire.  *Lanzillotta v. Gov't Emps. Ins. Co.*, No. 19-CV-1465(DLI)(JRC), 2023 WL 2652265, at *2 (E.D.N.Y. Mar. 25, 2023) (quoting *Pryce v. Progressive Corp.*, No. 19-CV-1467(RJD)(RER), 2022 WL 969740, at *4 (E.D.N.Y. Mar. 31, 2022)).  The Parties do not dispute that Allstate Fire issued the relevant policy and disbursed Brown's benefit payments.  (Mot. at 11; Opp. at 7.)  Because Allstate Fire is the final actor in

---

[3] Defendants only move to dismiss against Allstate Insurance on standing grounds based on the traceability requirement.  (ECF No. 57-5, "Opp." at 10 n.7; Mot. 11-16.)

the chain of causation, whether Brown has standing to sue Allstate Insurance "turns on the degree to which [Allstate Insurance]'s actions constrained or influenced the decision of the final actor[, Allstate Fire,] in the chain of causation." *Carver*, 621 F.3d at 226-27.

To show that a plaintiff has standing to sue a defendant who is not the "final actor in the chain of causation," courts have required a showing that the "final actor" is left little discretion or control because of the defendant's actions. *See Carver*, 621 F.3d at 226-27 (comparing *Bennett*, 520 U.S. at 169 with *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 28, 42-43 (1976)). In *Bennett*, petitioners had standing to seek judicial review of the Fish and Wildlife Service's "administrative advisory opinion" even though the Bureau of Reclamation was the "final actor" that chose to adhere to restrictions in the Service's advisory opinion. 520 U.S. at 168-71. The Bureau of Reclamation was required to articulate its reasons for any disagreement with the Service's advisory opinion and "r[a]n[] a substantial risk if its . . . reasons [for any disagreement] turn[ed] out to be wrong." *Id.* at 169. The Supreme Court thus held that the Service's advisory opinion had a "powerful coercive effect" and played a "central role" in the Bureau's decision. *Id.*

Likewise, in *Carver*, the Second Circuit held Carver had

standing to sue New York City over the withholding of a portion of his lottery winnings even though the New York State Office of Temporary Disability Assistance (OTDA) was the final actor who withheld half of Carver's $10,000 lottery winnings.  621 F.3d at 225, 227.  Carver had previously received public assistance from New York City.  *Id.*  "New York law affords the State OTDA no discretion in obtaining reimbursement of public-assistance funds; if a public-assistance recipient wins the lottery, the OTDA must intercept his winnings."  *Id.* at 227.  Other than the City's prior provision of public assistance, there was "no other relevant basis for State interception" of Carver's lottery winnings; thus, the City's actions were a sufficient cause of Carver's injury to establish standing against the City.  *Id.*

By contrast, in *Simon*, the Supreme Court held that plaintiffs did not have standing to contest an IRS Revenue Ruling "allowing favorable tax treatment to a nonprofit hospital that offered only emergency-room services to indigents" because "[i]t is purely speculative whether the denials [of non-emergency-room services]... fairly can be traced to [the Ruling] or instead result[ed] from decisions made by the hospitals without regard to the tax implications." 426 U.S. at 42-43.  In sum, a plaintiff does not have standing to sue a defendant who was not the "final actor in the chain of causation," if there was some other reason or cause for the final actor's alleged

10

commission of the relevant injury that is not attributable to the defendant's actions. *Carver*, 621 F.3d at 226-27; *see also Bennett*, 520 U.S. at 169; *Simon,* 426 U.S. at 28, 42-43. Plaintiff only has standing to sue Allstate Insurance if Allstate Fire, the "final actor," is left little discretion or control because of the actions of Allstate Insurance. *See id.*

Brown relies on two facts to assert that he meets this "determinative or coercive" standard to establish standing to sue Allstate Insurance, (*see* Pl. Objs. at 8-10): (1) an Allstate Insurance employee created a "form wage loss calculation worksheet . . . generally used by [Allstate Fire] . . . to calculate First Party Benefit Claims," (Stip. ¶ 8); and (2) adjusters employed by Allstate Insurance were involved in adjusting Brown's claims, (*see* Defs.' Resp. to First Interrog. Nos. 3, 7-8.)[4]

On *de novo* review, the Court agrees with the R&R's well-reasoned analysis that these facts are "not enough support for a determination that Allstate Fire's conduct was constrained or influenced" by Allstate Insurance such that Brown has standing

---

[4] In deciding the Defendants' motion to dismiss pursuant to Rule 12(b)(1), the Court may consider stipulations and interrogatory answers. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd,* 561 U.S. 247, (2010) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings.")

11

to sue Allstate Insurance.  (R&R at 10-12.)  Brown fails to allege or provide support for the proposition that it was Allstate Insurance's actions that required or coerced Allstate Fire to injure Brown.  On the contrary, Brown's contract with Allstate Fire governs. The relevant worksheet is just a "tool used to calculate First Party Benefit claims."  (Stip. ¶ 8.) "Each First Party Benefit Claim is adjusted on an individualized basis  . . . under the specific policyholder's policy," so "Allstate Fire adjusts claims submitted by Allstate Fire insureds pursuant to the terms and conditions of the policies of insurance issued by Allstate Fire."  (Stip. ¶ 6, 15.)  Unlike in *Carver*, Allstate Insurance does not "constrain[] or influenc[]" Allstate Fire but instead, Allstate Fire's policy with Brown "constrain[s]" any adjuster utilizing the worksheet to calculate a claim.  *See* 621 F.3d at 226.

Allstate Fire's general and non-mandatory use of a worksheet created by an Allstate Insurance employee does not change the analysis.  The Parties acknowledge that the worksheet was "generally used" to calculate First Party Benefit Claims but was not used in various situations including when "the claimant is self-employed," "there is an extended delay in obtaining employment verification and wage loss data," or "the claimant is awarded social security benefits."  (Stip. ¶ 8.)  The Court agrees with the R&R's well-reasoned finding that the "permissive

12

language of the stipulation" undermines Brown's argument that Allstate Insurance "constrained or influenced" Allstate Fire such that Brown has standing to sue Allstate Insurance.  (R&R at 12.)

That Allstate Insurance employees were involved in adjusting Brown's claims also does not change the analysis. (*See* Defs.' Resp. to First Interrog. Nos. 3, 7-8.)  The Parties stipulated that Allstate Insurance adjusters "routinely perform wage loss calculations for other Allstate [entities including Allstate Fire]."  (Stip. ¶ 10.)  Defendants also represented that "Allstate Fire adjusted all of its New York no-fault claims itself during the relevant time period."  (ECF No. 57-3, Ex. B, "Defs.' Resp. to Second Interrog." at 6.)  The Court agrees with the R&R's analysis that this Circuit generally respects distinct corporate forms, requires contractual privity, and has held that "share[d] resources" between corporate entities is generally insufficient to establish standing.  *Mahon*, 683 F.3d at 59, 61, 64-66 (2d Cir. 2012); (*see also* R&R at 9-12, 12 n.5.)  Brown has no business relationship or contractual privity with Allstate Insurance, nor has Brown shown that Allstate Insurance so constrained or coerced Allstate Fire to cause Brown's alleged injury.

Although Brown is correct that unlike in *Lanzilotta, Pryce*

and *Mahon*,[5] Brown has established that (i) Allstate Insurance created a worksheet that Allstate Fire used in calculating claims, and (ii) Allstate Insurance employees played a role in adjusting Brown's claim, in the instant case and upon Brown's pleadings, these facts are insufficient to establish that Allstate Insurance had a "determinative and coercive" effect on Allstate Fire. (*See* Pl Objs. at 9 n.6; Stip. ¶¶ 6, 8, 10, 15; Defs.' Resp. to First Interrog. Nos. 3, 7-8.)

Brown asserts that "any doubt" over whether these facts are sufficient to satisfy Article III's traceability requirements "must be resolved" in his favor. (Pl. Objs. at 10.) But "[a]s the party invoking federal jurisdiction, [Brown] bear[s] the burden of demonstrating that [he] ha[s] standing," *TransUnion LLC*, 594 U.S. at 430–31 (2021). This Court does "accept[] as

---

[5] In finding that plaintiffs did not have standing to sue certain defendants, these courts noted that plaintiffs had failed to show what defendant was responsible for any allegedly improper formula or that a defendant had required others to use such formulas. *See Mahon*, 683 F.3d at 61 (Plaintiff had no standing to sue affiliate entities merely on the basis that all entities used the same policy and "share[d] resources."); *Lanzillotta*, 2023 WL 2652265, at *4 ("Plaintiff presents no evidence to show which entity was responsible for creating the allegedly improper formula or for requiring [the insurance subsidiary] to utilize it."); *Pryce*, 2022 WL 1085489, at *11, *report and recommendation adopted as modified*, 2022 WL 969740 (E.D.N.Y. Mar. 31, 2022) ("Plaintiff has not adduced any facts to establish that it is more likely than not that [the parent c]orporation was directly responsible for the creation or implementation of that formula, or that it directed its subsidiaries to implement the formula on its behalf.").

true all well-pleaded material allegations of the complaint," *Mahon*, 683 F.3d at 62, but Brown made no allegations regarding Allstate Insurance's influence over Allstate Fire in the complaint. (*See generally* Am. Compl.) Although "these fact[ual] circumstances] do not entirely preclude the possibility that [Allstate Insurance] . . . directed [Allstate Fire] to implement the [worksheet and allegedly improper] formula on its behalf, such a conclusion would be based solely on speculation and would be inappropriate at this stage." *Pryce*, 2022 WL 1085489, at *11 (quoting *Baur v. Veneman*, 352 F.3d 625, 637 (2d Cir. 2003) ("[A] plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing.")). As such, contrary to Brown's assertion, there is thus no "doubt" that "must be resolved" in his favor because Brown's complaint failed to allege any facts regarding Allstate Insurance's determinative or coercive role vis-à-vis Allstate Fire.

Accordingly, because Brown's policy with Allstate Fire governs, the Court agrees with the R&R that the use of shared resources, through a shared worksheet or claims adjusters, is not enough, without more, for Brown to establish that Allstate Insurance's actions had a "determinative and coercive effect" on Allstate Fire. (R&R at 10-12.) Brown's objection to the R&R's finding that Brown does not have standing to sue Allstate

15

Insurance is respectfully overruled.

## II.  Brown's Objection to the R&R's Calculation of the Amount in Controversy

Brown argues that the R&R violated the rule that the jurisdictional amount in controversy is determined at the "time-of-filing," by re-calculating the amount in controversy before determining whether an exception, either "bad faith" or a "mistake" applies.  (Pl. Objs. at 10-12.)  Brown asserts that the "mistake" exception only applies if the defendant can show with a legal certainty that there was mistake on the face of the complaint.  (*Id.* at 10.)  Brown ignores that the R&R's well-reasoned decision indeed found with a "legal certainty" that the amount in controversy "was actually below the threshold amount when the complaint was filed" such that there was a "mistake in the complaint with respect to the amount in controversy."  *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 507 (2d Cir. 2005); (*see also* R&R 13-19).

Brown objects to the R&R's recalculation of the amount in controversy" (Pl. Objs at 11-12), but it is well-established that a Court may do so to assess the merits of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction for failure to plead facts establishing that aggregate claims exceed the amount in controversy threshold.  *See e.g.*, *Metcalf v. TransPerfect Translations Int'l, Inc.*, 632 F. Supp. 3d 319, 326

16

(S.D.N.Y. 2022) (engaging in calculations to assess whether amount in controversy was met).

Moreover, the Second Circuit is clear.  The amount-in-controversy is established as of the date the complaint is filed, but a court may dismiss the case if it is later revealed that as of the date the complaint was filed, the required jurisdictional amount was not satisfied at the time of filing. *See Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (holding that the District Court should have dismissed the case when discovery made clear that there was never $75,000 in controversy.)  Courts have understood *Tongkook* to state that revelations in discovery about the amount in controversy that existed at the time of filing can require dismissal.  *See, e.g.*, *Gucciardo v. Reliance Ins. Co.*, 84 F. Supp. 2d 399, 403 (E.D.N.Y. 2000) (citing *Tongkook* for the proposition that when "facts developed during discovery . . . reveal that the Plaintiff's claim could not reach the jurisdiction threshold at the time of filing the complaint, the suit must be dismissed").  This is because "with mounting federal case loads, ... it has become doubly important that the district courts take measures to discover those suits which do not belong in a federal court and to dismiss them when the court is convinced to a legal certainty that the plaintiff cannot recover an amount in excess of the minimum statutory

17

jurisdictional amount." *Tongkook*, 14 F.3d at 784 (citation modified).

Based on the record and on *de novo* review, the Court finds that the R&R did not violate the time-of-filing rule by calculating the amount in controversy at the time of filing to determine, with a "legal certainty," that Brown failed satisfy the CAFA amount in controversy. (*See* R&R at 13-19.) The amount in controversy is not satisfied.

## III. Brown's Objection to the R&R's Exclusion of Future Damages in Calculating the Amount in Controversy

Brown asserts that the R&R should have accounted for damages that continued to accrue more than a year after the amended complaint was filed in November 2024. (Pl. Objs. at 12-13.) But Brown's assertion is in direct contradiction to his argument regarding the "time-of-filing" rule that "the amount in controversy standard is analyzed at the time the action is commenced, not periodically as damages continue to mount." *Gucciardo*, 84 F. Supp. 2d at 403 (citing *Tongkook*, 14 F.3d at 784-85) (citation modified)). Looking to "continuing damages to establish the jurisdictional amount" is also improper here because "[g]enerally, an insured who sues its insurer for failure to pay benefits under a policy may only recover benefits that have already accrued." *Pollock v. Trustmark Ins. Co.*, 367 F. Supp. 2d 293, 299 (E.D.N.Y. 2005).

18

None of Brown's cited authority states otherwise.  (Pl. Objs. at 13.)  Plaintiff's reliance on *Cain v. Hartford Life & Accident Insurance Co.*, 890 F. Supp. 2d 1246, 1250 (C.D. Cal. 2012) is misplaced because there, the plaintiff brought a claim for long term disability insurance benefits and "ongoing benefits into the future."  The court in *Cain* found that federal removal jurisdiction was proper because, based on plaintiff's claims, future damages were "permitted under California law," and the defendant-insurance company "presented evidence to show that plaintiff's claim for ongoing benefits into the future . . . would far surpass the $75,000 jurisdictional limit."  *Id.*[6]

In *Beacon Construction Co. v. Matco Electric Co.*, 521 F.2d 392, 395 (2d Cir. 1975), the language that "the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation," (*see* Pl. Objs. at 13), refers to valuing claims that are equitable in nature.  *See also DiTolla v. Doral Dental IPA of New York*, 469 F.3d 271, 276 (2d Cir. 2006) ("The Supreme Court has held that, in actions for declaratory or injunctive relief, which . . .  are equitable in

---

[6] *Schwenk v. Cobra Manufacturing. Co.*, 322 F. Supp. 2d 676, 679 (E.D. Va. 2004) is also inapposite because there the Court found that plaintiff was acting in bad faith to avoid federal removal jurisdiction by alleging only $74,000 in damages in his complaint, but "admit[ing] that he intended to amend . . . at some future date to an amount in excess of $75,000, as much as six million dollars."

nature, the amount in controversy is measured by the value of the object of the litigation." (citing *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 347 (1977))).

Neither of these factual circumstances exist here. Brown does not allege that he has any future, ongoing damages against the Defendants and abandoned his request for declaratory and injunctive relief when Brown amended the complaint. (*See* R&R at 11 n.4); (*compare also* ECF No. 1 ¶¶ 54-58, *with* ECF. No. 23.) On *de novo* review, the Court is, therefore, unconvinced that the R&R erred in failing to account for future damages and respectfully overrules Brown's objection.

## IV. Brown's Objection to the R&R's Exclusion of Discretionary Attorneys' Fees from the Amount in Controversy Calculation

Brown argues that there is no binding Second Circuit authority for the proposition that attorneys' fees can only be included in the amount in controversy calculation if they are "recoverable as a matter of right pursuant to statute or contract." (R&R at 17 (quoting *Melendez v. R.W. Garcia Co. Inc.*, No. 24-CV-9500 (JAV), 2025 WL 1220903, at *4 (S.D.N.Y. Apr. 28, 2025)); *see also* Pl. Objs. at 13-14.) Thus, Brown argues that the R&R erred in failing to add potential discretionary attorneys' fees from the GBL § 349 claims to the amount in controversy. *Id.* But in *Givens*, the Second Circuit held that "it is settled that [attorneys'] fees may not properly

20

be included in determining the jurisdictional amount unless they are recoverable as a matter of right." *Givens v. W. T. Grant Co.*, 457 F.2d 612, 614 (2d Cir.), *vacated on other grounds*, 409 U.S. 56 (1972).  Although *Givens* was vacated on other grounds, "the Second Circuit, in several unpublished decisions, has continued to cite *Givens* as setting the relevant test for the consideration of attorney[s'] fees [in calculating the amount in controversy], *see Suarez v. Mosaic Sales Solutions US Operating Co., LLC*, 720 F. App'x 52, 55 (2d Cir. 2018); *Kimm v. KCC Trading, Inc.*, 449 F. App'x 85, 86-87 (2d Cir. 2012)." *Melendez*, 2025 WL 1220903, at *4.

Brown's reliance on *Pollock* is misplaced.  *See* 367 F. Supp. 2d at 297-98; (Pl. Objs. at 14).  In *Pollock*, the court did not include potential discretionary GBL § 349(h) attorney fees in finding federal subject matter jurisdiction but instead remanded the case to state court because plaintiff alleged damages of $55,000 and "to reach the jurisdictional amount fees would have to be $20,000," which "would be unreasonable for th[e] action and would not be awarded."  367 F. Supp. 2d at 298. Accordingly, on *de novo* review, the Court agrees with the R&R's reliance on the analysis in *Melendez* to include only mandatory fees in the amount in controversy calculation.  (R&R at 17-18.)

Moreover, even if discretionary attorneys' fees were included in the amount in controversy calculation, Brown would

21

still fail to satisfy CAFA's amount in controversy requirement. Brown's objection relates only to the R&R's exclusion of attorneys' fees for Brown's GBL § 349 claims. (*See* Pl. Objs. at 13-14; R&R at 17-19.) GBL § 349(h) provides for damages recovery of $50 or triple actual damages up to a maximum of $1,000. Given a maximum damages recovery of $1,000 for every potential class member against Allstate Fire, total class damages recovery would be $590,000. (*See id;* ECF No. 57-4 at 49.) Even assuming a district court awarded the total amount of GBL § 349 damages to attorneys' fees, Brown would still be over $300,000 short from the CAFA $5,000,000 requirement. (*See* R&R 18-19; ECF Nos. 57-4 at 49.) After adding $590,000 in discretionary GBL § 349 fees to the R&R's generous $802,400 attorneys' fees calculation for Brown's No-Fault Claims and the $3,303,290 damages total proffered by Plaintiff's expert attributable to Allstate Fire, the amount in controversy would total only $4,695,690. (*Id.*) Moreover, this Court agrees with the R&R's well-reasoned concerns regarding Brown's experts' apparent methodological overestimations and inconsistencies in assessing damages attributable to Allstate Fire. (R&R at 15-16.) Thus, it is likely that Brown is even more than $300,000 short of the CAFA jurisdictional requirement.

Brown also appears to argue that because "courts routinely assume an attorney[s'] fee[s] award of roughly one-third of

actual damages" we should do so here and add that fee amount to the damages calculation. (Pl. Objs. at 15.)  But Brown ignores that in his only cited case, a non-binding Eastern District of Missouri case *Schott v. Overstock.com, Inc.,* the plaintiff's over-taxation claims were brought under a state tax law that "expressly authorizes an award of attorney's fees" subsumed within and as a portion of the overall recovery for punitive damages.  No. 4:20-CV-00684-MTS, 2021 WL 148875, at *4 (E.D. Mo. Jan. 15, 2021).  In other words, *Schott*, does not support the proposition that this Court should add 33% of Brown's damages recovery to Brown's amount in controversy calculation because statutorily authorized attorneys' fees under Missouri state law in *Schott* were considered part of the recoverable damages.  *See id.*

On *de novo* review, the Court is thus unconvinced that the R&R erred in failing to account for discretionary attorneys' fees or a "one-third of actual damages" attorneys' fees award in calculating the amount in controversy and respectfully overrules and denies Brown's objection.

**V.    Brown's Objection to Excluding Allstate Insurance, Allstate P&C and Allstate Indemnity in Calculating the Amount in Controversy**

Brown argues that the R&R improperly resolved merits defenses in a jurisdictional motion by excluding Allstate Insurance, Allstate P&C, and Allstate Indemnity from the amount

23

in controversy calculation.  (Pl Objs. at 15-16.)  But by definition, a decision that a plaintiff lacks standing to sue is not a decision on the merits because standing is "a necessary, non-waiv[]able prerequisite to subject matter jurisdiction." *Zanotti v. Invention Submission Corp.*, No. 18-CV-5893 (NSR), 2020 WL 2857304, at *10 (S.D.N.Y. June 2, 2020); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 354 (2006) ("Because plaintiffs have no standing . . . , the lower courts erred by considering their claims against it on the merits.")

On *de novo* review, the Court thus finds that the R&R did not err in excluding from the amount in controversy analysis damages as to defendants that Brown lacks standing to sue.

## VI.  The Court Lacks Subject Matter Jurisdiction over Plaintiff's Individual Claim

The Court reviews for clear error the R&R's unobjected recommendation that the Court lacks subject matter jurisdiction over Brown's individual claim.  *Galvez*, 967 F. Supp. 2d at 617 (Where a party does not object to a portion of the R&R, the Court "'need only satisfy itself that there is no clear error on the face of the record.'" (quoting *Reyes*, 2003 WL 76997, at *1)).  This Court agrees with the R&R's well-reasoned finding that Brown's individual damages in the sum of $1,707.99 plus attorneys' fees are insufficient to establish subject matter jurisdiction because the amount is well short of the $75,000

jurisdictional requirement. (*See* R&R at 21-22.)  Accordingly, Brown's individual claim is dismissed for lack of subject matter jurisdiction.

## VII. Brown Lacks Standing to Sue Allstate Indemnity and Allstate P&C

Brown does not object to Magistrate Judge Marutollo's finding that Plaintiff lacks standing to sue Allstate Indemnity and Allstate P&C.  (*See* Pl. Objs. at 8-10.)  On clear error review, this Court agrees with the R&R's well-reasoned finding that Brown lacks standing to sue Allstate Indemnity and Allstate P&C because Brown does not allege any injury caused by either entity nor shown how Allstate Indemnity or Allstate P&C played any role in Allstate Fire's disbursement of Brown's claim. (*See* R&R at 10-11; *see generally* Am. Compl.)

### CONCLUSION

Based on the foregoing reasons and upon *de novo* review, Brown's objections are respectfully overruled, and the Court adopts in its entirety Magistrate Judge Marutollo's thorough and well-reasoned recommendations.  Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction is GRANTED in its entirety, and the Clerk of the Court is directed to close

25

this case.

**So ordered.**

Dated:      February 26, 2026
            Brooklyn, New York

_____
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York

26